## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUSAN PRIDDY, CRAIG FISCHER, JAN YARD, PRAIRIE ANALYTICAL SYSTEMS, INC., METRO CHICAGO SURGICAL ONCOLOGY, LLC, MARK SCHACHT, M.D., NEIL FRIEDMAN, M.D., SURAJ DEMLA, JEFFREY ROSE, AD-LIBS ADVERTISING, INC., and MICHAEL BIELER, Individually and on Behalf of All Other Individuals Similarly Situated who are beneficiaries or dependents of beneficiaries of health care coverage provided or administered by Defendant and employers or individuals who purchased on their own behalf or on behalf of their employees and their beneficiaries health insurance coverage underwritten, administered or otherwise provided by HEALTH CARE SERVICE CORPORATION, an Illinois Mutual Reserve Insurance Company, d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS, BLUE CROSS AND BLUE SHIELD OF MONTANA, BLUE CROSS AND BLUE SHIELD OF NEW MEXICO, BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, and BLUE CROSS AND BLUE SHIELD OF TEXAS, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 14-3360 |
| Plaintiffs, | ) | |
| v. | )<br>) | |
| HEALTHCARE SERVICES CORPORATION, an Illinois Mutual Reserve Insurance Company, | )<br>)<br>) | |
| Defendant. | )<br>) | |

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

The Plaintiffs' First Amended Complaint includes seven counts asserting violations of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and Illinois statutory and common law.

Pending before the Court is the Motion of Defendant Healthcare Services Corporation to Dismiss the Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6).

## I. FACTUAL ALLEGATIONS

The Plaintiffs consist of eight individuals and three entities. Plaintiffs Susan Priddy, Craig Fischer and Suraj Demla purchased individual policies from Defendant Health Care Services Corporation ("the Defendant" or "HCSC"), an insurance company licensed by the State of Illinois. Plaintiffs Jan Yard, Mark Schacht, M.D., Neil Friedman, M.D., Jeffrey Rose and Michael Bieler obtained coverage through a plan purchased by their employers. Plaintiffs Prairie Analytical Systems, Inc., Metro Chicago

Surgical Oncology, LLC, and Ad-Libs Advertising, Inc., are corporations that purchased coverage from one of HCSC's divisions to cover their employees.

Plaintiffs Priddy, Fischer and Yard are Illinois citizens residing in the Central District of Illinois.

Plaintiff Prairie Analytical Systems, Inc., is an Illinois corporation with its domicile and principal place of business in Sangamon County, Illinois. Plaintiff Metro Chicago Surgical Oncology, LLC is an Illinois corporation with its domicile and principal place of business outside the Central District of Illinois.

Drs. Schacht and Friedman are citizens of Illinois who reside outside the Central District of Illinois.

Plaintiffs Demla and Rose are citizens and domiciled in the State of Texas.

Plaintiff Ad-Libs Advertising, Inc., is a corporation with its domicile and principal place of business in the State of Oklahoma.

Plaintiff Bieler is a citizen of and domiciled in the State of

Oklahoma.

Defendant HCSC is an Illinois Mutual Reserve Insurance Company with its domicile and principal place of business in Chicago, Illinois. HCSC does business in the Central District of Illinois.

Through its Blue Cross and Blue Shield divisions, HCSC offers health insurance policies in Illinois, Montana, New Mexico, Oklahoma and Texas for individuals and groups. HCSC enters into financial arrangements with drug providers in order to manage pharmaceutical prices. The Plaintiffs allege that Illinois law "prohibits Defendant from profiting or enjoying a benefit to the exclusion of its insureds/owners," given that it is "required to maintain and use its assets for the exclusive benefit of its insureds/owners." See Doc. No. 12 ¶¶ 26-27. Additionally, the Defendant has violated its obligations by including language in its Plan Documents which states it may obtain discounts and receive a benefit from Providers that it does not share with its insureds.

The Plaintiffs further allege that Defendant purchased a series of wholly-owned affiliates or purchased controlling interest in affiliates or

holding companies that control other affiliates and other separate entities from which the Defendant obtained profits and other benefits. Subsequently, HCSC placed several of its officers and directors on the board of directors on one or more of these newly-acquired affiliates or entities, or permitted some of its officers and directors to sit on the boards of these newly acquired entities. The Plaintiffs assert that, under federal law and Illinois common law, a presumption of self-dealing arises based on this practice. Accordingly, the Defendant must show its conduct was for the exclusive benefit of the insureds/owners and it may not claim its conduct was justified by the "business judgment rule."

The Defendant contends that its financial arrangements with drug providers often lead to discounts and other allowances that result in ultimate payment of substantially less than the billed amount. These price allowances figure into the price of the product and are not otherwise shared with groups or insureds.

HCSC also enters into contracts with hospitals and other facility providers to which providers agree to provide services to individuals covered

by the policies for contracted amounts. These amounts are often lower than the provider's billed charges. Under some plans, HCSC calculates a patient co-insurance amount using an estimate of these discounted amounts instead of the actual ultimate discount.

For the patient, the coinsurance calculated using the average discount percentage is final and will not be adjusted. Because the average discount percentage is an estimate, however, final discounts from facility providers may vary from that number. HCSC pays providers additional amounts if the discounts are less than the average discount percentage. It receives the benefit if the actual discounts are greater.

The Plaintiffs contend that, irrespective of the Defendant's obligations under ERISA, the Defendant has failed to adhere to its obligations under Illinois law. The Plan owners are the owners of this Illinois mutual insurance company and the Defendant does not "share" with its owners the benefits its receives from separate contracts with third party providers. Moreover, HCSC does not share the benefits it derives from affiliates and subsidiaries. According to the Plaintiffs, therefore, the

Defendant has admitted to withholding corporate assets or "discounts" from providers.

Count I is asserted by all Plaintiffs, except for Priddy, Fischer and Demla, and asserts ERISA breach of fiduciary claims, pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). Count II is asserted by the same group of Plaintiffs and alleges a claim for "prohibited transactions," under 29 U.S.C. § 1106. Count III is asserted by the same group of Plaintiffs and requests the appointment of a receiver under 29 U.S.C. § 1109(a).

Count IV is asserted by Illinois residents only and alleges ERISA violations pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), based on alleged false information contained in the "Explanation of Benefits" ("EOB").

Count V is asserted by Plaintiffs Priddy, Fischer and Demla and alleges a state law claim for lack of good faith and fair dealing pursuant to the Unfair Claims Practices statute, 215 ILCS 5/154.6, and based on common law. Count VI is asserted by the same Plaintiffs and alleges a state law claim for breach of common law fiduciary duty. Count VII is

asserted by the same Plaintiffs and seeks an accounting under Illinois law.

The Defendants have moved to dismiss the Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. DISCUSSION

The Defendant contends there are a number of reasons why the Complaint should be dismissed. First, the Plaintiffs have not adequately alleged constitutional standing. Additionally, the Employer Plaintiffs' ERISA claims should be dismissed for lack of standing.

The Defendant further asserts that Count I does not allege a plausible claim for relief under ERISA. Moreover, HCSC is not a fiduciary under ERISA or as an insurer and it did not breach a fiduciary duty with board member payments. The Defendant also contends that Counts I and II do not adequately allege ERISA violations for prohibited transactions.

The Defendant alleges that Count III, which requests the appointment of a receiver under ERISA, is not a statement of a claim and should be dismissed.

The Defendant next asserts that the allegation that HCSC violated ERISA by sending EOBs which contained false information does not state a claim under ERISA.

The Defendant asserts that Counts V and VI do not state claims under Illinois statutory law. Moreover, the claim for an accounting contained in Count VII does not constitute a separate cause of action.

A. Legal standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although factual allegations at this stage are accepted as true, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

A plaintiff cannot survive a motion to dismiss by merely providing notice of a claim. See Adams v. City of Indianapolis, 742 F.3d 720, 728-29 (7th Cir. 2014). Because of the plausibility requirement, "the court must review the complaint to determine whether it contains 'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged." Id. at 729 (quoting Twombly, 550 U.S. at 556).

B. Motion to dismiss for lack of standing

The plaintiffs must have standing to satisfy Article III's case-or controversy requirement. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). To invoke the jurisdiction of the federal courts, a plaintiff must show (1) a concrete injury that is actual or imminent and not hypothetical; (2) fairly traceable to the defendant's alleged wrongful conduct; (3) that is likely to be redressed by a favorable decision. See id. at 560-61. A plaintiff must show personal injury and not merely allege that other unidentified members of a potential class may have suffered injury. See Warth v. Seldin, 422 U.S. 490, 502 (1975).

(1)

The Defendant contends the Plaintiffs have not alleged individual standing to pursue their claims because they have not alleged that they paid for pharmaceutical products or made facility coinsurance payments that were calculated using the average discount percentage.  Thus, they have failed to allege personal injury and cannot establish constitutional standing.

In paragraph 47 of the Amended Complaint, the Plaintiffs state that "Defendant caused Plaintiff to pay in excess of the actual amount of coinsurance Plaintiff and others similarly-situated should pay under the contractual terms as set out in the Plan documents."  Additionally, paragraph 49 provides: "As a result of Defendants' relationship with its pharmacy benefit managers, Plaintiffs paid higher prescription drug charges."  Paragraph 50 provides, in part, that "Plaintiffs also paid higher co-insurance rates than they should have because of the undisclosed, secret rebates and arrangements between Defendants and preferred providers which discounted the rates reimbursed by Defendants."

Upon considering these allegations, the Court concludes that the

foregoing statements adequately allege a concrete injury which is fairly traceable to the Defendant's conduct and which potentially could be redressed by a decision in the Plaintiffs' favor. Accordingly, the Plaintiffs have asserted constitutional standing.

(2)

Next, the Defendant contends that the ERISA claims of Prairie Analytical Systems, Inc., Metro Chicago Surgical Oncology, LLC and AD-Libs Advertising, Inc. ("Employer Plaintiffs") should be dismissed for lack of standing. The Employer Plaintiffs are corporations that allegedly obtained policies from HCSC to cover their employees. Although the Employer Plaintiffs purport to bring ERISA claims in Counts I-IV, they do not allege any basis for the assertion that they, as opposed to their employees, have submitted claims for benefits, paid for pharmaceuticals or have a plausible claim of concrete injury.

Employers lack standing to pursue claims under ERISA's civil enforcement provision. See Giardono v. Jones, 867 F.2d 409, 413 (7th Cir. 1989) (holding that an employer does not have standing to sue under

ERISA § 1132, which expressly grants federal jurisdiction to limited parties, not including employers), abrogated on other grounds by Yates v. Hendon, 541 U.S. 1, 4-5 (2004).

The Plaintiffs note that paragraph 4 of the Amended Complaint provides that some of the Employer Plaintiffs are also plan participants or beneficiaries. The Complaint does not say which of the Employer Plaintiffs so qualify. The Court concludes that this general statement, standing alone, is not enough to allege a concrete injury that is traceable to the alleged wrongful conduct.

Accordingly, the Employer Plaintiffs lack standing and will be dismissed. To the extent that Prairie Analytical Systems, Inc., Metro Chicago Surgical Oncology, LLC and AD-Libs Advertising, Inc. have alleged claims, Counts I-IV are dismissed as to them. The Court notes that those counts include other parties as well. The Employer Plaintiffs will be dismissed as parties.

### C. Motion to dismiss for failure to state a claim

#### (1) Count I

### a. Alleged violation of 29 U.S.C. § 1132(a)(1)(B)

Count I is brought on behalf of all Plaintiffs except for Priddy, Fischer and Demla and purports to allege a violation of 29 U.S.C. § 1132(a)(1)(B) and 1132(a)(3). Section 1132(a)(1)(B) authorizes a civil action by a participant or beneficiary "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Defendant alleges that Count I does not assert a plausible claim for relief under the statute.

The Plaintiffs allege the First Amended Complaint is not limited to the Defendant's utilization of average discount price and the explanation of benefits. The Plaintiffs are also challenging the Defendant's use of ERISA plan assets to purchase a series of "affiliates."

In paragraph 54 of the First Amended Complaint, the Plaintiffs allege HCSC violated ERISA Section 502(a)(1)(B) because "[t]he actual, contractual relationship and the resulting financial consequences of that relationship between Defendant and its affiliates and/or Defendant's

Providers is not disclosed by Defendant to Defendant's individual insureds in any manner that would enable the individual [Plaintiffs] to understand or accept that relationship." See Doc. No. 12 ¶ 54.

Relying on Larson v. United Healthcare, 723 F.3d 905 (7th Cir. 2013), the Defendant states, "An ERISA § 502(a)(1)(B) claim is essentially a contract remedy under the terms of the plan." See id. at 911 (internal quotation marks omitted). HCSC alleges that the terms of the plan attached to the Complaint are indisputable.[1] Members are responsible for a flat dollar payment per prescription and, to the extent HCSC receives a discount from the drug provider, "[n]either the Group nor you are entitled to receive any portion of any such payments, discounts and/or other allowances." See Doc. No. 12, ¶¶ 35, 36 & Ex. A at 75.

The Plaintiffs assert, that by not sharing the monies or profits derived from the affiliates with either the Plan owners or passing on the profits to the Plan beneficiaries through reduced premiums or other means, the

_____

[1]To assist "in determining the sufficiency of the complaint, the court may rely on exhibits to the complaint." Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 466 (7th Cir. 2007).

Defendant is violating ERISA and Illinois common law.

The Defendant contends that Plaintiffs' First Amended Complaint and the attachment establish that HCSC's contractual "relationships" and the financial consequences of contracts with affiliates and providers are disclosed in the only contract on which the Plaintiffs rely. The Plaintiffs provide no basis for the allegation that they had a different "reasonable expectation and understanding of their contracted rights."

To the extent that Plaintiffs in Count I are alleging the Defendant violated § 502(a)(1)(B) of ERISA by failing to disclose its contractual relationships and the financial consequences of its contracts, the Court concludes that Plaintiffs have failed to allege a plausible claim.

b. Alleged breach of fiduciary duty under ERISA

The Plaintiffs (excluding Priddy, Fischer and Demla) allege that Defendant violated its fiduciary duties pursuant to 29 U.S.C. § 1104(a)(1). Pursuant to the Defendant's status as a fiduciary under ERISA, the Plaintiffs allege it must "act exclusively on behalf of the Plan Participants and their beneficiaries . . . under a duty of loyalty." See Doc. No. 12 ¶ 57.

By receiving financial benefits which it does not "share" or pass on to the Plan Participants, therefore, HCSC violates its fiduciary obligations.

To assert an ERISA claim for breach of fiduciary duty, the Plaintiffs must show that Defendant was a fiduciary as the term is defined in the statute and was acting in that capacity at the time it took the challenged actions. See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 471-72 (7th Cir. 2007). "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The Plaintiffs allege that Defendant has discretion in determining the amount to be paid by insureds. In the Amended Complaint, the Plaintiffs assert that Defendant "exercises discretion, and thereby acts as a fiduciary, in determining the 'estimate' average discount percentage ('ADP') utilized

to determine the amount in connection with the provision of benefits under the Plan." See Doc. No. 12 ¶25. The Plaintiffs contend HCSC has discretion in creating, calculating and administering the benefit determinations affecting the Plaintiffs and other Plan Participants

To the extent that Plaintiffs allege that HCSC acts as a fiduciary in determining the average discount percentage, the Court does not agree. The Plaintiffs do not assert that an erroneous calculation of the average discount percentage gives rise to their claims. Moreover, the average discount percentage is applied to facility charges and not pharmaceutical charges. The Priddy Policy defines it as a "percentage discount determined by Blue Cross and Blue Shield that will be applied to a Provider's Eligible Charge for Covered Services rendered to you by Hospitals and certain other health care facilities for purposes of calculating Coinsurance amounts, deductibles, out-of-pocket maximums and/or any benefit maximums." See Doc 9-1, at 12. That policy notes that Blue Cross and Blue Shield considers a number of factors in determining the average discount percentage applicable to a claim. These include differences among hospitals

and other facilities, contracts with those entities and the nature of the services involved and other factors. It does not involve a discretionary determination of the management or assets of an ERISA benefit plan.

Based on the foregoing, it is apparent that the average discount percentage methodology is a specific component of certain HCSC insurance policies sold to the Plaintiffs or their employees to provide health care coverage. Although HCSC sells the insurance policies, it does not have discretion over any ERISA benefit plan or the assets of the plan.

In Caremark, the Seventh Circuit rejected the plaintiff ERISA plan's assertion that a third party contracting with it is a fiduciary under § 1002(21)(A). In that case, the plaintiff ERISA fund alleged that Caremark "breached its fiduciary duties by charging Carpenters a higher price than Caremark negotiated with retail pharmacies, and by choosing drugs for the formulary that were more expensive so that Caremark could pocket extra rebates it obtained from drug makers." 474 F.3d at 470. The district court there found that nothing in the contracts required Caremark to pass through drug cost savings and that the prices were the result of an "arms-

length deal that did not give rise to fiduciary duties." See id. at 470-71.

The Seventh Circuit affirmed, noting that under any interpretation of the contracts, Caremark was not required to pass along all of its savings and, because that was the core of the complaint, the plaintiff had not alleged a breach of fiduciary duty. See id. at 475. The court observed that Caremark was entitled to retain any rebates and did not have to pass the savings on to the ERISA fund. See id. at 475-76.

Applying the reasoning of Caremark, the Court concludes that HCSC was not required to pass on rebates and discounts received from pharmaceutical companies and other providers. Because ERISA does not require the Defendant to pass on the savings pursuant to its contracts with the Plaintiffs, the Court finds that it did not breach any fiduciary duty under ERISA by failing to pass on rebates and discounts.

### c. HCSC as a fiduciary as an insurer

The Plaintiffs also allege that Defendant is a fiduciary "as an Illinois Mutual Insurance Company." See Doc. 12 ¶59. The Defendant notes "it is well settled that no fiduciary relationship exists between an insurer and

an insured as a matter of law." Martin v. State Farm Mut. Auto. Ins. Co.,
348 Ill. App.3d 846, 850-51 (1st Dist. 2004). It claims that HCSC's status
as a mutual insurance company does not alter that fact. See Illinois State
Bar Ass'n Mut. Ins. Co. v. Cavenagh, 368 Ill. Dec. 55, 67 (1st Dist. 2012).

As the Plaintiffs allege, however, Illinois courts have recognized that
a mutual insurance company and its directors may have a fiduciary
obligation to their insureds under Illinois law. See Lower v. Lanark Mut.
Fire Ins. Co., 114 Ill. App.3d 462, 467-68 (2nd Dist. 1983). Therefore, the
Court is unable to conclude that HCSC is not a fiduciary based on its
status as a mutual insurance company. Accordingly, the Court declines to
dismiss this portion of Count I.

### d. Breach of fiduciary duty with board member payments

In paragraph 59 of the Amended Complaint, the Plaintiffs allege that
HCSC breached a fiduciary duty by "plac[ing its] Officers and Directors on
various Boards of Directors of affiliates and other entities owned or
controlled by the Defendant, and the retention of profits and other
benefits." Paragraph 31 states in part: "Federal law and the common law

of the State of Illinois recognize a presumption of self-dealing created by the placement by Defendant of its Officers and Directors on the boards and/or control groups of the affiliates and subsidiaries which it purchased using the assets of this mutual insurance company." As an example, the Complaint cites Prime Therapeutics, alleging it is the fourth largest pharmacy benefit manager in the country. The Plaintiffs allege that a "substantial majority" of Prime Therapeutics' Board of Directors are affiliated with Blue Cross Blue Shield and HCSC.

The Defendant notes that the only affiliate identified by the Plaintiffs is Prime Therapeutics. The Plaintiffs list two members who hold positions at HCSC and are on Prime Therapeutics' Board of Directors, citing that entity's website in paragraph 33 of the Amended Complaint. HCSC asserts that the website lists twelve directors and the other ten seats are held by individuals who are unaffiliated with HCSC and Blue Cross and Blue Shield divisions. Because this is not a "substantial majority" or enough for HCSC to exercise "control" and, given that Plaintiffs have not adequately alleged a fiduciary relationship, the Defendant claims Plaintiffs

are unable to establish a breach of fiduciary duty on this basis.

The Plaintiffs contend that Defendant has breached its fiduciary duty under ERISA and the common law. Citing Kenseth v. Dean Health Plan, Inc., 610 F.3d 452 (7th Cir. 2010), the Plaintiffs allege that as a fiduciary under ERISA, the Defendant must "carry out its duties with respect to the plan solely in the interest of the participants and beneficiaries and []for the exclusive purpose of [] providing benefits to participants and their beneficiaries." Id. at 465 (internal quotation marks omitted) (citing 29 U.S.C. § 1104(a)(1)). The Plaintiffs further state that ERISA provides that a fiduciary "shall not deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1).

In paragraphs 27 and 28 of the First Amended Complaint, the Plaintiffs allege that Defendant's use of premiums it obtained from its insureds/owners for their health care coverage to purchase ownership or gain control of various separate companies it describes as "affiliates" or "subsidiaries" and its admitted decision not to share these benefits with its owners/insureds constitutes self-dealing. In paragraph 70, the Plaintiffs

allege the Plan documents show that the financial benefits and profits insure to someone other than its self-identified 14 million owners.

Because the Amended Complaint includes sufficient allegations that suggest discovery might reveal evidence of liability, the Court concludes that Plaintiffs have asserted a plausible claim for breach of fiduciary duty on this basis. At this stage, the Court need not determine whether a "substantial majority" of Prime Therapeutics' Board of Directors or those of any other entity are affiliated with the Defendant.

Accordingly, the Court declines to dismiss this aspect of Count I.

### (2) Counts I and II and § 1106(a)(1) and (b)

The Defendant contends that Counts I and II do not adequately allege violations of 29 U.S.C. § 1106(a)(1) and (b). The Plaintiffs (except Priddy, Fischer and Demla) also allege in Count I that HCSC violated this statute by its non-disclosure of the specific terms of contracts HCSC has with providers, thereby constituting "Prohibited Transactions." Section 1106 generally prohibits a fiduciary from (a) causing an ERISA plan to engage in certain types of transactions; (b) dealing with the "assets of the

plan in his own interest or for his own account," or engaging in other types of transactions adverse to the interests or assets of the ERISA plan.

Paragraph 58 of the Amended Complaint states:

> The non-disclosure of the actual terms of these agreements that benefit Defendant at the expense of Plaintiffs, and other provisions of the Plan documents which Defendant has relied upon to take advantage of this scheme are also Prohibited Transactions which are also barred by 29 U.S.C. § 1106(a)(1) and (b) as they provide a benefit to the Defendant at the expense of benefits that should be shared with the Plan Participants and their beneficiaries.

The Defendant states that Plaintiffs do not cite any alleged transaction between HCSC and an ERISA Plan that violates a specific provision. It appears that Plaintiffs are alleging that by not disclosing certain information, the Defendant is engaging in "Prohibited Transactions" in violation of § 1106.

HCSC further contends the Plaintiffs do not identify any ERISA "Plan Assets" that were affected by alleged HCSC conduct. The Defendant correctly notes that the Amended Complaint refers to "Plan participants and their beneficiaries" and not to ERISA Plan assets.

Based on a liberal interpretation of the above language, the Court

concludes the language can be construed as referring to ERISA Plan Assets and thus fall within the scope of § 1106.  Although the claims that are part of Count I are lacking in specificity, the Court will allow them to go forward in order to determine if discovery will reveal whether the alleged non-disclosure resulted in Prohibited Transaction pursuant to § 1106.

In Count II, the Plaintiffs assert that § 1106 prohibits the "Defendant from utilizing any Plan asset to the detriment of its Plan Participants."  See Doc. No. 12 ¶ 61.  However, the Defendant contends that Plaintiffs do not allege such "funds" are the Plaintiffs' "Plan assets."  Paragraph 62 states:

> Defendant derives its operating assets from premium payments made to it by its insureds/owners.  Defendant admittedly has used the funds derived from these premiums to purchase a series of affiliates and subsidiaries, which Defendant also acknowledges provide Defendant with substantial financial benefits including but not limited to rebates from various drug companies, reduced costs of drugs charged to Defendant, and various other benefits.  Defendant states in the policy provisions cited above that these financial benefits are not shared in any manner with its insureds.  This acknowledged use of Plan assets for the benefit of Defendant but to the detriment of its insureds, the Plan Owners and Plan Participants, violates the prohibition on such conduct under 29 U.S.C. § 1106 that bars the use of any Plan asset by a Plan fiduciary such as Defendant to the detriment of the Plan Participants and others similarly situated.

The Defendants' assertion that Plaintiffs have not alleged that funds HCSC derived from premium payments are "Plan assets" is not entirely accurate. While perhaps not directly alleged, it is certainly implied in the above paragraph. Accordingly, the Court concludes that Plaintiffs have sufficiently alleged a violation of § 1106 in Count II.

(3) Count III and appointment of a receiver

In Count III, Plaintiffs (except Priddy, Fischer and Demla) seek the "Appointment of a Receiver" under 29 U.S.C. § 1109(a). Section 1109(a) states:

> Any person who is a fiduciary with respect to the plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan for any losses to the plan resulting from each such breach, and to restore to such plan and profits of such fiduciary which have made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

The Defendants allege that a request for an appointment of a receiver is not a separate cause of action under ERISA. Rather, it is a specific claim

for relief that must be supported by a viable cause of action.

Because it is too early to determine whether there was an ERISA violation, the Court is unable to rule out whether the drastic remedy is appropriate. Therefore, the Court declines to dismiss Count III.

### (4) Count IV

In Count IV, the Plaintiffs (Illinois residents only) assert claims for violations of 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). These Plaintiffs allege HCSC violates ERISA by sending a statement entitled "Explanation of Benefits" ("EOB") that falsely advise Plaintiffs and other Plan participants and beneficiaries that the amount the Provider will charge for the particular service in question has not and cannot be determined at the time the EOB is issued to the Plaintiffs and others similarly situated. The Plaintiffs allege that because the Defendant knows these charges, its statement that it must "estimate" the charges upon which the coinsurance is based and calculate the charge based on an average discount percentage is false. The Plaintiffs further contend this is "false and deceptive, intended to lull the Plan participants into accepting the EOB scheme

without realizing that the percentage the plan participants are required to pay is well in excess of the percentage that a reasonable insured would expect to pay under the terms of the policy; and the scheme correspondingly enables Defendant to pay far less in reimbursement than a reasonable insured would understand it to owe." See Doc. No. 12 ¶78.

The Plaintiffs also assert that Defendants have provided their Plan participants "a confusing and contradictory explanation of the supposed necessity" for the EOB/average discount percentage methodology. Consequently, the Defendant has failed under ERISA to "adequately and disclose the means of ascertaining the benefits at issue in a means understandable to the average participant," as is required under ERISA. See Doc. No. 12 ¶79. The Plaintiffs allege this "scheme" violates the Defendant's fiduciary obligations because it "reduces the benefits available to the Plan Participants and inflates the cost to those Plan Participants in violation of the obligations imposed on Defendant under ERISA prohibiting such self-dealing." See ¶80. The Plaintiffs also assert that the Illinois Administrative Code prohibits the Defendant from interpreting the

provisions of its policy language contrary to Illinois statutory law and that prohibition is not preempted by ERISA.

The Plaintiffs contend that the EOB form is the primary instrument HCSC used in creating confusion and ambiguity between the so-called "clear disclosure" of HCSC's asserted "right" to discounts, as opposed to what the Plaintiffs claim is the correct treatment of the monies HCSC adds to these bills–an unauthorized and improper surcharge. Paragraph 43 of the First Amended Complaint states, "The EOB, however, does not inform the insured that the bill or charge upon which HCSC has calculated the [average discount percentage] is one created by adding on a charge for a 'non-service' on the part of HCSC. The EOB states to the contrary and is yet another deception fostered by Defendant." Paragraph 44 provides as follows:

> The precise mechanism of the EOB may be seen by the example attached as Exhibit B to this Complaint. This EOB does not refer to any separate charge or expense created by or attributable to Defendant. Instead the EOB on its face refers exclusively to a service or billing submitted by one of Plaintiff's Providers, and is thereby consistent with the definitions in the Booklet referring to calculations based on actual Provider charges and inconsistent with the interpretation given it by

Defendant that the booklet and the EOB "clearly" informs Plaintiff that HCSC is taking a payment for its own benefit.

Paragraph 45 states that the EOB purports to say that the average discount percentage is based on an "Amount Billed" by the medical Provider and is calculated on that basis.

The Plaintiffs contend that by misleading participants as to how the average discount percentage is determined and making misrepresentations concerning Provider charges, HCSC has breached its fiduciary duty. "The duty to disclose material information is the core of a fiduciary's responsibility." Kenseth v. Dean Health Plan, Inc., 610 F.3d 452, 466 (7th Cir. 2010). This duty "includes an obligation not to mislead a plan participant to misrepresent the terms or administration of an employee benefit plan." Id.

In contending the count should be dismissed, the Defendant cites a Northern District decision by United States District Judge Charles R. Norgle in Berk v. Health Care Service Corporation, d/b/a Blue Cross Blue Shield of Illinois, Case Number 12-CV-8074, which is attached to the Defendant's Memorandum. The court noted that plaintiff was seeking

"reformation" of the contract to eliminate the use of the average discount percentage, contending that the defendant's failure to disclose the financial arrangements and ambiguous contract terms "prevent[ed] plan participants, like himself, from accurately calculating their payment obligations." See Berk, at 9. He alleged "that the use of the [average discount percentage] breaches Defendant's fiduciary duty to the plan participants under ERISA because, by using the [average discount percentage] instead of the exact amount of the discounts pursuant to the contracts between Defendant and the providers, Defendant is obtaining a financial benefit at the expense of the plan participants." Id. at 7. In addition to seeking contract reformation, Berk sought "recovery of the money that he would have saved on his coinsurance." Id. at 9.

The court in Berk found there was no ERISA violation and the plaintiff failed to state a claim for relief. See id. It concluded that "the terms of the plan explaining the [average discount percentage] scheme are not ambiguous as Plaintiff concludes; rather, they are specifically outlined and defined." Id. The court observed "the contract discloses the fact that

Defendant has separate financial arrangements with healthcare providers–arrangements from which the participants are not entitled to benefit." Id.

HCSC asserts the claims here should be dismissed for the same reason. The Plaintiffs have not alleged any language in their policies that prohibits the Defendant from using the average discount percentage. As previously discussed, the Priddy Policy discloses the average discount percentage methodology as part of the contract and specifies that Priddy is not entitled to any amount HCSC receives in excess of the average discount percentage. The court in Berk observed that, "[w]hile Plaintiff may prefer to have his benefits calculated in another manner, it is simply not the agreement that his employer reached with [HCSC]." Berk, at 9-10.

To the extent that Plaintiffs allege the explanation of benefits and average discount percentage scheme violates the Defendant's fiduciary obligations, HCSC reiterates it is not a fiduciary on the facts alleged because the contracts purchased from HCSC do not require it to pass on its discounts from providers. See Caremark, 474 F.3d at 466. The court in

Berk applied Caremark in dismissing the plaintiff's claim, as follows:

> A fiduciary duty must be alleged in accordance with § 1002 and the specific facts at issue[] in this case–namely, whether Defendant is acting as a fiduciary when implementing the ADP scheme as provided by the insurance contract, as opposed to using the savings as provided by the financial agreements between Defendant and the health care providers. Because [HCSC] has no duty to pass on the savings from the financial agreements in accordance with the express terms of the contract, it is not a fiduciary with respect to the allegations in the complaint.

Berk, at 11.

The Court agrees with Judge Norgle's analysis in Berk. The Plaintiffs here do not point to any language in their policies that prohibits the Defendant from using the average discount percentage. The average discount percentage methodology is disclosed in the Priddy Policy. The Policy specifies that Priddy is not entitled to any amount HCSC receives in excess of the average discount percentage. Accordingly, the Defendant has no duty to pass on its savings from its separate financial agreements with health providers. Moreover, the Defendant is not an ERISA fiduciary for this purpose because the contracts that Plaintiffs or their employers purchased from HCSC do not require HCSC to pass on these discounts

from providers.  Because the Defendant is not contractually obligated to pass on these discounts from providers, the Court concludes HCSC is not an ERISA fiduciary for that purpose.  See Caremark, 474 F.3d at 466.

The Defendant alleges the Plaintiffs' assertion that the EOB/average discount percentage scheme violates the Illinois Administrative Code is misplaced.  Title 50, Section 2001.3 of the Illinois Administrative Code prohibits an insurance company from including in a policy "a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State."   Because the average discount percentage methodology is a specific term of the Plaintiffs' contracts and thus cannot be alleged to be a discretionary interpretation of the terms of their policies, HCSC alleges Section 2001.3 of the Illinois Administrative Code is not applicable to this case.

The Plaintiffs dispute the Defendant's interpretation of Section 2001.3 on the basis that HCSC exercises discretion over the benefits determination.  Because the record establishes that the average discount

percentage is a specific term of the Plaintiffs' contracts, the Defendant has no discretionary authority and Section 2001.3 is not applicable.

Accordingly, the Court further finds that Plaintiffs have not asserted a viable claim pursuant to Title 50, Section 2001.3 of the Illinois Administrative Code. Count IV of the Amended Complaint fails to state a claim upon which relief can be granted and will be dismissed.

### (5) Count V–Violation of Illinois statutory law

In Count V, Plaintiffs Priddy, Fischer and Demla assert that Defendant is bound by the rules and regulations of Illinois which require good faith and fair dealing as prescribed by the Unfair Claims Practices statute codified at 215 ILCS 5/154.6 and by the common law and in accordance with the Illinois Business Corporation Act, which imposes fiduciary obligations on insurance companies that operate as mutual companies that are owned by its policyholders. The Plaintiffs contend that HCSC has breached its fiduciary obligations, breached its duty of good faith and fair dealing, and has placed its own financial interests above the interests of its owners, the policyholders.

As the Defendant notes, however, "section 154.6 does not give rise to a private remedy or cause of action by a policyholder against an insurer but is instead regulatory in nature."  Area Erectors, Inc. v. Travelers Property Cas. Co. of America, 367 Ill. Dec. 392, 399 (1st Dist. 2012).  Section 154.7 authorizes the State Director of Insurance with "the authority to charge a company with section 154.6 improper claims practices  and serve the company with notice of a hearing date."  Id.  Accordingly, the Plaintiffs "cannot personally seek damages from [HCSC] under section 154.6."  Id.

For the foregoing reasons, the Plaintiffs have not alleged a plausible claim in Count V for violation of Illinois statutory law.  Consequently, Count V will be dismissed.

### (6) Count VI–Breach of common law fiduciary duty

Plaintiffs Priddy, Fischer and Demla assert a state law claim for breach of fiduciary duty, claiming that HCSC, a mutual insurance company under Illinois law, has admitted to retaining various profits and benefits which it refuses to share or credit to the benefit of the owners of the company.

The Defendant earlier contended that HCSC is not a fiduciary by virtue of being a mutual company. HCSC claims the Plaintiffs plead no other facts in support of the claim or any facts at all in support of a claim for any breach. To the extent that Plaintiffs allege HCSC "placed or permitted to be placed on the Boards of Directors of one or more of these affiliates and subsidiaries Officers and Directors of the Defendant corporation itself," the Plaintiffs identify only Prime Therapeutics as an "affiliate." Moreover, the Plaintiffs have not alleged what fiduciary duties are breached by the placement of these directors or how the Plaintiffs were injured.

Accordingly, the Defendant asserts that Count VI should be dismissed.

For the reasons provided earlier in considering whether HCSC is a fiduciary as an Illinois Mutual Insurance Company, the Court declines to dismiss Count VI.

(7) Count VII–Action for accounting under Illinois law

In Count VII, Plaintiffs Priddy, Fischer and Demla seek an accounting

under Illinois law.

The Defendant alleges that, like requesting appointment of a receiver, an accounting is a not a separate cause of action. "An accounting is a form of equitable relief incidental to a substantive claim." Adams v. Catrambone, 359 F.3d 858, 861 n.2 (7th Cir. 2004). Given that it is too early to determine whether any of the Plaintiffs' substantive claims will succeed, the Court concludes it is premature to dismiss Count VII.

### III. CONCLUSION

Based on the foregoing, the Court concludes that the individual Plaintiffs have sufficiently alleged constitutional standing.

The Employer Plaintiffs–Prairie Analytical Systems, Inc., Metro Chicago Surgical Oncology and Ad-Libs Advertising, Inc.–are dismissed for lack of standing. Accordingly, the claims in Counts I-IV which are asserted by the Employer Plaintiffs only will be dismissed and the Employer Plaintiffs will be terminated as Parties.

The Defendant's Motion will be Allowed to the extent that Plaintiffs are alleging a breach of fiduciary duty under ERISA for failure to pass on

rebates and discounts.

The Defendant's Motion will be Denied to the extent that Plaintiff is alleging the HCSC is a fiduciary due to its status as a mutual insurance company.

The Motion to Dismiss will be Denied to the extent that Plaintiffs are asserting a breach of fiduciary duty based on board member payments.

The Motion to Dismiss will be Denied to the extent that Plaintiffs are alleging  violations of § 1106 in Counts I and II.

The Motion to Dismiss will be Denied as to Count III.

The Motion to Dismiss will Be Allowed as to Counts IV and V.

The Motion will be Denied as to Counts VI and VII.

Ergo, the Motion of Defendant Healthcare Services Corporation to Dismiss the First Amended Complaint [d/e 13] is ALLOWED IN PART and DENIED IN PART.

The Motion to Dismiss for lack of standing as to Prairie Analytical Systems, Inc., Metro Chicago Surgical Oncology, LLC and Ad-Libs Advertising, Inc. is ALLOWED.  Those Plaintiffs are terminated as Parties.

The Motion to Dismiss for lack of standing as to other Plaintiffs is DENIED.

The Motion to Dismiss is ALLOWED as to the claims which allege a breach of fiduciary duty under ERISA for failure to pass on rebates and discounts.

The Motion to Dismiss as to other breach of fiduciary duty claims is DENIED.

The Motion to Dismiss is DENIED to the extent that Plaintiffs are asserting claims for Prohibited Transactions in Counts I and II.

The Motion to Dismiss is DENIED as to Count III.

The Motion to Dismiss is ALLOWED as to Counts IV and V.

The Motion to Dismiss is DENIED as to Counts VI and VII.

This case is referred to United States Magistrate Judge Tom Schanzle-Haskins for the purpose of holding a scheduling conference.

ENTER: March 18, 2016

FOR THE COURT:

 s/Richard Mills
Richard Mills
United States District Judge